UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| USA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CRIMINAL ACTION NO. H-05-68 |
| | § | |
| MICHAEL WILLIAMS, *et al*., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Defendant is accused of conspiring to possess crack and powder cocaine and of possession of a firearm in violation of federal law. He has filed a motion to suppress all of the evidence on the ground that it was the fruit of an illegal search. He has also moved to dismiss the indictment on the ground that it is based solely upon inadmissible evidence. His co-defendant, Rodney Jones, has joined in these motions. Because the Court finds that the search was not illegal and that the evidence is admissible, both motions by both Defendants are **DENIED**.

I.   BACKGROUND

On July 29, 2004, Defendant was riding in a Hummer with two friends, Rodney Jones and Chandra Chandler. Both Jones and Defendant are African-American; Chandler is Caucasian. The three drove into the parking lot of a housing complex where Harris County Sheriff's Deputy Jimmie Cook was monitoring traffic. Cook claims that Chandler failed to use her turn signal before turning into the parking lot and that, as the vehicle passed him, he noticed that its registration sticker had expired. Cook sent a radio broadcast to other officers in the complex, advising them to stop the Hummer. Other officers made the stop and asked the occupants to step out of the vehicle. Those officers then allegedly discovered a gun and substances that turned out to be crack and powder cocaine in a cardboard box on the floor of the front passenger side of the

vehicle.

Defendant claims, and Chandler has testified, that when the first officer approached the vehicle, Chandler asked why she had been stopped. According to Chandler, the officer replied that he had seen that Chandler was a Caucasian female in the company of two African-American males in a bad neighborhood and had suspected that she was being robbed. Chandler cannot identify the officer who made the comment, and no officer has admitted to making it. No one contends that Deputy Cook, who does not match Chandler's description of the officer, made the comment.

Defendant argues that the officers had no reason, other than the race of its occupants, for stopping the Hummer. Chandler testified that she did use a turn signal when turning into the apartment complex. And Defendant contends that Deputy Cook could not possibly have seen that the registration sticker had expired, because the night was dark, the sticker was small, the Hummer was moving, and Deputy Cook was ten to thirty yards away. Therefore, according to Defendant, the stop was solely based on illegal racial profiling and its fruits should be excluded from evidence.

## II.     ANALYSIS

### A.     The Fourth Amendment Claim

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. Evidence obtained in violation of a defendant's Fourth Amendment rights is inadmissible. *Weeks v. United States*, 232 U.S. 383, 398 (1914). Defendant contends that the stop, the detention of the passengers, and the search of the Hummer violated his Fourth Amendment rights and therefore that the evidence seized from the Hummer must be excluded as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Police officers may constitutionally stop a vehicle and check the driver's license and registration upon "articulable and reasonable suspicion that a motorist is unlicensed or that an

automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Deputy Cook testified at the hearing that he saw the Hummer turn into the housing complex parking lot without using a signal. Chandra Chandler testified that she used a turn signal. The Court found both witnesses to be credible. The discrepancy between their accounts need not mean that either is lying. It may be that Ms. Chandler used her turn signal at the beginning of the turn but Deputy Cook did not see the car until it was well into the turn and the signal had clicked off. If so, Deputy Cook had grounds for reasonable suspicion, even though no traffic violation actually occurred. In any event, Deputy Cook stated that he saw the expired registration sticker before making the stop, and, upon examination, the sticker was indeed expired. Given these facts, the Court can only conclude that the stop was supported by reasonable suspicion and thus permissible under the Fourth Amendment.

Similarly, the police did not violate Defendant's rights by ordering him to step out of the vehicle. Concerns about officer safety justify such a "*de minimis*" intrusion upon an individual's liberty. *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977). Indeed, this case illustrates the soundness of the *Mimms* reasoning. The *Mimms* Court noted that, according to one estimate, "approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile." *Id.* at 110 (internal quotation marks and citation omitted). Here, several officers testified that they were concerned for their safety as they approached the Hummer, and after Defendant stepped out of the vehicle, the officers discovered that he had a gun within reach. Under these circumstances, the officers' action in ordering Defendant out of the Hummer was clearly permissible.

Finally, the search of the vehicle did not violate Defendant's Fourth Amendment rights. Indeed, it may be that no constitutionally cognizable search took place at all, since the government contends that the firearm, at least, was in plain view when Defendant stepped out of the car.

"When an officer observes an object left by its owner in plain view, no search occurs because the owner has exhibited 'no intention to keep [the object] to himself.'" *Illinois v. Caballes*, 125 S. Ct. 834, 842 n.6 (2005) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). If the gun was in plain view and the drugs were in the box with it, then no search occurred and the Fourth Amendment simply does not apply.

In any event, Chandler, the operator of the vehicle, consented to a search, and "a search pursuant to consent . . ., properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity." *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973). Although she did not own the vehicle, Chandler was using it at the time of the stop, and thus her consent was sufficient to justify the search, even though the search implicated the rights of other users of the car. *See United States v. Matlock*, 415 U.S. 164, 170 (1974); *Frazier v. Cupp*, 394 U.S. 731, 740 (1969). No one denies that Chandler actually and voluntarily consented. Thus, the search satisfied the requirements of the Fourth Amendment.

### B. The Equal Protection Claim

Defendant is correct that police may not stop a vehicle solely on the basis of the race of its occupants. *See Whren v. United States*, 517 U.S. 806, 813 (1996). The right recognized in *Whren* arises from the Equal Protection Clause, not from the Fourth Amendment. *Id.* As the government correctly points out, however, neither the United States Supreme Court nor the Fifth Circuit has ever held that suppression is an available remedy for an equal protection violation. *See United States v. Chavez*, 281 F.3d 479, 486-87 (5th Cir. 2002) ("Neither the Supreme Court nor our Court has ruled that there is a suppression remedy for violations of the Fourteenth Amendment's Equal Protection Clause . . . ."). The *Chavez* Court declined to address the question because there was no evidence that the stop was motivated by a discriminatory purpose. *Id.* at 487. *See also United States v. Lopez-Moren*o, No. 04-30633, 2005 WL 1864257, at *10 (5th Cir. Aug. 8, 2005) (again

declining to resolve the issue in the absence of proof of discriminatory purpose).

Here, as in *Chavez* and *Lopez-Moreno*, there is no evidence that the motivation for the stop was based upon the race of the passengers. Even if Chandler is telling the truth about the racially offensive comment made by the unidentified officer, the fact remains that the stop was initially ordered by an officer who is not alleged to have made any such comment. There is no evidence that Deputy Cook decided to stop the Hummer because of the race of its occupants, or that he could even see the passengers clearly enough to determine their race. In the absence of any proof of discriminatory purpose by the officer who made the decision to stop the Hummer, this Court declines to decide the equal protection suppression issue.

**CONCLUSION**

Because the stop, detention, and search at issue in this case satisfied the requirements of the Fourth Amendment, and because there is no evidence that they were motivated by purposes prohibited by the Equal Protection Clause, the evidence thereby obtained is admissible. Defendant's motion to suppress and motion to dismiss the indictment are therefore **DENIED**.

**IT IS SO ORDERED.**

SIGNED THIS 2ND DAY OF SEPTEMBER, 2005.

Keith P. Ellison
United States District Judge

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.