UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| USA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CRIMINAL ACTION NO. H-05-68 |
| | § | |
| MICHAEL WILLIAMS, *et al*., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Defendant Michael Williams is accused of conspiring to possess crack and powder cocaine and of possession of a firearm in violation of federal law. He previously moved to suppress the evidence on Fourth Amendment and Equal Protection grounds, arguing that the traffic stop that preceded his arrest was not based upon reasonable suspicion but instead was the result of racial profiling. This Court denied the motion. Williams now moves for reconsideration of that decision and for issuance of a subpoena *duces tecum* for records reflecting the racial composition of persons stopped by Harris County Sheriff's Department Deputy Jimmie Cook, the officer who ordered the traffic stop.

Williams correctly states, in his motion, that the Court's decision to deny the motion to suppress and dismiss was based upon a determination of Cook's credibility. Williams now argues that Cook's testimony at the hearing on the motion to suppress provides grounds for reconsideration. Specifically, Williams points to Cook's statement under oath that a majority of the persons whom he has stopped within the Haverstock Hills apartment complex (where the traffic stop giving rise to this case occurred) are non-African-American. Williams presented evidence at the hearing that the majority of the complex's residents are African-American. Thus, he argues, Cook's statement--and by extension the whole of his testimony--is suspect. Williams

also argues that an alleged statement by one of the officers making the stop, to the effect that the stop was based upon the race of the vehicle's occupants, indicates that Cook must have made a racial comment in sending out his radio call.

First, the fact--if it is a fact--that a majority of the residents of the Haverstock Hills complex are African-American does not in itself undermine Cook's testimony. It may be that visitors to the complex are stopped by police more often than are residents, with whom the police are more likely to be familiar and whose presence in the complex they are less likely to question. Apparently recognizing this possibility, Williams points out in his motion for reconsideration that, according to a statement made by the manager of the complex to Williams's counsel, most of the visitors to the complex are the male boyfriends or relatives of the single African-American women who live there. However, Williams did not present evidence to this effect at the hearing. His failure to call the manager as a witness deprived the Court of the opportunity to assess the manager's credibility and the source and extent of his claimed knowledge. Moreover, Williams apparently expects the Court to infer that the male relatives and boyfriends of African-American women are invariably African-American. This the Court declines to do. In sum, Williams has offered no actual evidence that casts doubt upon the credibility of Cook's testimony. Even if Cook were incorrect, and only a large minority of those whom he had previously stopped within the apartment complex were non-African-American, such an error would not prove that Cook's other testimony was erroneous.

As to Williams's argument that the alleged racial comment by the unidentified officer who made the stop shows that Cook was motivated by race in ordering the stop, the Court declines to make assumptions that fly in the face of the testimony of believable witnesses. Not only Deputy Cook but also Deputy Guidry testified that Cook did not give a reason for the stop when he sent his radio message. Cook stated that he keeps his radio messages as short as

possible, to leave the airwaves free for use by other officers who may need assistance. Guidry testified that he did not know the reason for the stop at the time that he made it. Although Williams contends that Cook's claim to have perceived the expired registration sticker before making the stop is "incredible" (Def.'s Mot. for Reconsideration at 3), the fact is that, upon investigation, the sticker turned out to be expired. Thus, the suspicion that motivated the stop was reasonable, even if pretextual.

Fundamentally, Williams's motion appears to take issue, albeit implicitly, with Fourth Amendment jurisprudence, which requires only a minimal showing to justify a vehicular stop. This Court is not unsympathetic. The Supreme Court's position on this issue has, however, been clear, and this Court lacks the prerogative, on its own, to raise the Fourth Amendment standard. For this reason, Williams's motion for reconsideration and for issuance of a subpoena *duces tecum* is **DENIED**.

**IT IS SO ORDERED**.

SIGNED this 12th day of September, 2005.

Keith P. Ellison
United States District Judge

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**